**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

SCOTT LYNCH, an individual

Plaintiff(s),

v.

DENVER PUBLIC SCHOOLS

Defendant(s).

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Scott Lynch ("Plaintiff" or "Mr. Lynch"), hereby respectfully files this action against Defendant Denver Public Schools ("Defendant" or "the District" or "DPS"), by and through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows. This action seeks appropriate damages and costs.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal question jurisdiction arises under Title VII and Title IX.
2. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.
3. Plaintiff Lynch is a resident of Colorado.
4. Defendant Denver Public Schools is a public school district located in the state of Colorado.
5. The wrongful acts alleged by Plaintiffs occurred in whole or in part in Colorado.
6. Venue is proper in this court under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

7. Plaintiff is a white male.

8. Plaintiff began working for Defendant DPS in or around January 2012.

9. Plaintiff was employed as Senior Army Instructor with the Junior ROTC at North High School ("North"), a school within the District.

10. Plaintiff's position involved supervising two non-commissioned officers. About 160 students were enrolled in the program each year. Plaintiff taught fourth year students, coached the Raider team (a physical fitness team), and led the cyber patriot team which competed nationwide in cybersecurity events.

11. During Plaintiff's more than a decade of working for the District, no concerns or complaints regarding any racial or sex discrimination were raised about Plaintiff.

12. In or about September 2022, the District received unfounded and false complaints that Plaintiff violated District antidiscrimination policies.

13. In response, the District embarked on a racially and sexually discriminatory investigation that culminated in Plaintiff's discriminatory discharge.

14. Plaintiff never violated the District's antidiscrimination policies.

15. Plaintiff performed his job duties well in his 11 years with the District and received positive performance evaluations.

16. Nevertheless, in response to unfounded complaints, the District conducted a biased investigation that favored the false and unfounded allegations of a female student, over the truthful factual information provided by Plaintiff. The District's biased investigation led to the District's decision to terminate Plaintiff's employment on or around January 5, 2023.

17. The District's termination decision was filled with factual inaccuracies, inconsistencies, and biases that reflected the District's determination to side with the female student over Plaintiff.

18. Even when an appeal of the termination decision found that several of the District's key rationales were false, the District maintained its decision to terminate Plaintiff.

19. The District's biased investigation and discriminatory termination relied in part on a female student's allegation that in Plaintiff's role as coach of the Raider team, he excluded females from a team trip to Daytona.

20. This allegation was false. Plaintiff had to bring a team that met the competition's requirements and would be competitive with a chance to win. He composed his team by looking at the Army physical fitness test scores and the results of previous competitions. Plaintiff put the best team together based on the makeup of the competition. Therefore, he took a male team to participate in the competition. Plaintiff could not have brought a mixed team to compete in the competition because competition requirements required three female athletes with scores high enough to be competitive. No sex discrimination occurred.

21. The female student who made the complaint was not on the trip, did not allege that she should have been on the trip, and had no firsthand knowledge.

22. Nonetheless, the District favored the discredited allegation from a female student, over the truthful and factual information and evidence provided by Plaintiff.

23. The appeal of Plaintiff's termination confirmed that the people chosen for the competition were properly based on scoring and females were not discriminatorily excluded.

24. The District also credited unfounded allegations that Plaintiff allowed a male student in the program to record a video of himself making insensitive remarks about women.

25. Plaintiff never saw the video until the District's biased investigation. He would have taken disciplinary action against the student who made the video if he had known the video existed.

26. The appeal of Plaintiff's termination confirmed that Plaintiff had no knowledge of the student's video.

27. The District also alleged that Plaintiff created a sexually hostile work environment by the team's decision to a Hooters restaurant. The previous year, Plaintiff's direct supervisor, Plaintiff, and the team had also eaten at a Hooters restaurant. No one at the District raised any concerns, no complaints were made regarding the previous trip to Hooters, and Plaintiff's direct supervisor also attended without raising any concerns to Plaintiff or otherwise expressing any disagreement with the team's decision to eat at Hooters. The team's decision to eat at Hooter's did not contribute to a hostile environment, had been implicitly ratified and endorsed by Plaintiff's direct supervisor, never caused any concerns, and could not form any valid, non-discriminatory basis for any disciplinary action.

28. Nevertheless, the District maintained Plaintiff's termination.

29. During Plaintiff's time in the program, there had never been any other complaints about sexism or a sexually hostile environment. There were multiple years where there were more female students in student staff positions, including years with all female student staff.

30. The District's explanation that it was terminating Plaintiff in part due to his creation of sexually hostile environment is manifestly false and belied by the evidence and the District's own findings on appeal.

31. The District's investigation and termination decision were also racially biased and reflected racial discrimination.

32. The District credited unfounded complaints of racism in the program over the accurate and factual information provided by Plaintiff.

33. The District credited unfounded allegations involving a trip to Washington, D.C. in Spring 2021. The student staff was planning a trip to D.C. The trip was student led and planned. One of the students suggested visiting Black Lives Matter plaza while another student said they did not want to go. Plaintiff opposed going to Black Lives Matter plaza because of the chance of protests and violence which at the time were still recent news events. His opposition was solely about student safety. Plaintiff supported visiting the Black History museum.

34. Despite the D.C. trip being student led, the District cited the D.C. trip as evidence to support Plaintiff's termination.

35. The District also alleged that Plaintiff failed to respond to a student who used the "n-word." This is false. Plaintiff sent the student who used the "n-word" to the Dean and talked with the other students who were upset. The appeal of Plaintiff's termination confirmed that Plaintiff responded to the student's use of the racial slur. Nevertheless, the District credited the allegations from the student of color over Plaintiff.

36. No non-discriminatory reason existed for Plaintiff's termination.

37. Plaintiff never violated District antidiscrimination policies.

38. Plaintiff provided the District with truthful, accurate information and demonstrated he never violated District policy.

39. In fact, the District's own appeal affirmed much of the information provided by Plaintiff.

40. The District nevertheless credited unfounded complaints from female students and students of color.

41. Plaintiff was terminated on January 5, 2023, and on information and belief, the individual hired to fill Plaintiff's position for the following school year was Filipino.

42. The District's handling of Plaintiff, a white male, is part of a pattern of disparate treatment towards white, male employees.

43. For example, on information and belief, two white male Lieutenants Colonel were fired under similar circumstances to Plaintiff. On information and belief they were notified of investigations and fired within two weeks. On the other hand, on information and belief, in 2022, an African American non-commissioned officer from Manual High School violated directives from the commanding general of cadet command, and he was not fired.

44. On information and belief, Tim Hernandez, a Hispanic male, left his classroom at North High School to lead a walkout, and while he was placed on administrative leave, he was later hired in another position by the District.

45. Plaintiff and other white male employees of the District are subjected to termination swiftly following allegations, even when those allegations are unfounded and do not warrant disciplinary action, while non-white employees who do commit violations of District policy are not terminated.

46. The District's discriminatory termination of Plaintiff caused Plaintiff damages.

47. Plaintiff exhausted his administrative remedies by filing a charge of discrimination. Plaintiff received a right to sue letter.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### VIOLATION OF TITLE VII – SEX DISCRIMINATION

48. Plaintiff reincorporates and reallege all other paragraphs as if fully set forth herein.

49. Defendant violated Title VII through its wrongful acts alleged herein.

50. Plaintiff is a white male and protected by Title VII and state and federal law from discrimination on the basis of sex.

51. Plaintiff was qualified for his position at the District.

52. Plaintiff performed his job duties satisfactorily.

53. The District terminated Plaintiff under circumstances raising an inference of discrimination. Despite having clear, accurate, and factual information from Plaintiff that Plaintiff did not violate any District antidiscrimination policy, the District credited allegations from female students.

54. The District's termination decision was pretextual and filled with factual inaccuracies and inconsistencies.

55. The District's termination of Plaintiff's employment caused Plaintiff damages.

56. As a result of the District's discriminatory termination, Plaintiff suffered economic damages, and emotional distress, stress, and anxiety.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF TITLE IX – SEX DISCRIMINATION

57. Plaintiff reincorporates and reallege all other paragraphs as if fully set forth herein.

58. Defendant violated Title IX through its wrongful acts alleged herein.

59. Plaintiff is a white male and protected by Title VII and state and federal law from discrimination on the basis of sex.

60. Plaintiff was qualified for his position at the District.

61. Plaintiff performed his job duties satisfactorily.

62. The District terminated Plaintiff under circumstances raising an inference of discrimination. Despite having clear, accurate, and factual information from Plaintiff that Plaintiff did not violate any District antidiscrimination policy, the District credited allegations from female students.

63. The District's termination decision was pretextual and filled with factual inaccuracies and inconsistencies.

64. The District's termination of Plaintiff's employment caused Plaintiff damages.

65. As a result of the District's discriminatory termination, Plaintiff suffered economic damages, and emotional distress, stress, and anxiety.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE COLORADO ANTIDISCRIMINATION ACT – SEX DISCRIMINATION**

66. Plaintiff reincorporates and reallege all other paragraphs as if fully set forth herein.

67. Defendant violated CADA through its wrongful acts alleged herein.

68. Plaintiff is a white male and protected by Title VII and state and federal law from discrimination on the basis of sex.

69. Plaintiff was qualified for his position at the District.

70. Plaintiff performed his job duties satisfactorily.

71. The District terminated Plaintiff under circumstances raising an inference of discrimination. Despite having clear, accurate, and factual information from Plaintiff that Plaintiff did not violate any District antidiscrimination policy, the District credited allegations from female students.

72. The District's termination decision was pretextual and filled with factual inaccuracies and inconsistencies.

73. The District's termination of Plaintiff's employment caused Plaintiff damages.

74. As a result of the District's discriminatory termination, Plaintiff suffered economic damages, and emotional distress, stress, and anxiety.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF TITLE VII – RACE DISCRIMINATION**

75. Plaintiff reincorporates and reallege all other paragraphs as if fully set forth herein.

76. Defendant violated Title VII through its wrongful acts alleged herein.

77. Plaintiff is a white male and protected by Title VII and state and federal law from discrimination on the basis of race.

78. Plaintiff was qualified for his position at the District.

79. Plaintiff performed his job duties satisfactorily.

80. The District terminated Plaintiff under circumstances raising an inference of discrimination. Despite having clear, accurate, and factual information from Plaintiff that Plaintiff did not violate any District antidiscrimination policy, the District credited allegations from students of color.

81. The District's termination decision was pretextual and filled with factual inaccuracies and inconsistencies.

82. The District's termination of Plaintiff's employment caused Plaintiff damages.

83. As a result of the District's discriminatory termination, Plaintiff suffered economic damages, and emotional distress, stress, and anxiety.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1981 – RACE DISCRIMINATION**

84. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

85. 42 U.S.C. § 1981 provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

86. § 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

87. 42 U.S.C. § 1981 protects white employees from racial discrimination. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976).

88. Plaintiff was qualified for his position with the District.

89. Plaintiff performed his job duties satisfactorily.

90. The District terminated Plaintiff under circumstances raising an inference of discrimination. Despite having clear, accurate, and factual information from Plaintiff that Plaintiff did not violate any District antidiscrimination policy, the District credited allegations from students of color.

91. The District's termination decision was pretextual and filled with factual inaccuracies and inconsistencies.

92. The District's termination of Plaintiff's employment caused Plaintiff damages.

93. As a result of the District's discriminatory termination, Plaintiff suffered economic damages, and emotional distress, stress, and anxiety.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF THE COLORADO ANTIDISCRIMINATION ACT – RACE DISCRIMINATION**

94. Plaintiff reincorporates and reallege all other paragraphs as if fully set forth herein.

95. Defendant violated CADA through its wrongful acts alleged herein.

96. Plaintiff is a white male and protected by Title VII and state and federal law from discrimination on the basis of race.

97. Plaintiff was qualified for his position at the District.

98. Plaintiff performed his job duties satisfactorily.

99. The District terminated Plaintiff under circumstances raising an inference of discrimination. Despite having clear, accurate, and factual information from Plaintiff that Plaintiff did not violate any District antidiscrimination policy, the District credited allegations from students of color.

100. The District's termination decision was pretextual and filled with factual inaccuracies and inconsistencies.

101. The District's termination of Plaintiff's employment caused Plaintiff damages.

102. As a result of the District's discriminatory termination, Plaintiff suffered economic damages, and emotional distress, stress, and anxiety.

## REQUEST FOR RELIEF

103. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

104. Plaintiff requests that the court enter judgment in his favor and against Defendant as follows:

a. Awarding Plaintiff compensatory damages, including for emotional upset, stress, and anxiety in an amount to be established at trial;

b. Awarding Plaintiff economic damages, including for lost income, lost benefits, lost future wages, and out-of-pocket expenses in amounts to be established at trial;

c. Awarding Plaintiff costs and attorney fees;

d. Awarding the Plaintiffs any additional and further relief that the court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

*s/ Igor Raykin*
Igor Raykin, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
***Attorney for Plaintiff***

*s/ Michael Nolt*
Michael Nolt, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014

Phone: 720-588-9713
michael@coloradolawteam.com
***Attorney for Plaintiff***