IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 25-cv-03139-GPG-KAS

SCOTT LYNCH, an individual,

Plaintiff,

v.

DENVER PUBLIC SCHOOLS,

Defendant.

---

**ORDER**

---

Before the Court is Defendant's Motion to Dismiss (D. 9) and Defendant's Renewed Motion to Dismiss (D. 18). The Court DENIES Defendant's Motion to Dismiss as moot[1] and GRANTS the Renewed Motion for the following reasons.

## I. BACKGROUND

This civil action alleges reverse race and gender discrimination.[2] Plaintiff Scott Lynch is a white male who previously worked for Defendant Denver Public Schools (District). Plaintiff was hired in 2012 and worked as Senior Army Instructor with the Junior ROTC at North High School (North), a school within the District. About 160 students were enrolled in the program each year. He also coached the Raider team, a physical fitness team.

[1] Defendant's first motion was rendered moot by the filing of an amended complaint (D. 12).

[2] The Court draws the operative facts from the First Amended Complaint And Jury Demand (Complaint) (D. 12).

Around September 2022, the District received complaints that Plaintiff violated District anti-discrimination policies. The complaints came from female students and students of color. The District terminated Plaintiff after an investigation, which included an appeal. Plaintiff lists numerous issues raised in the investigation, but he does not purport to list them all. These issues included:

- Taking an all-male team to a competition;
- Allowing a male student in the program to record a video of himself making insensitive remarks about women;
- Creating a sexually hostile environment by, for example, taking the team to a Hooters restaurant;
- Opposing a visit to Black Lives Mater plaza during a team trip to Washington, D.C.;
- Failing to respond to a student's use of the "n-word"; and
- Comparing indigenous people to squirrels.

Plaintiff provides explanations or denials for these issues: the female students did not qualify, he did not know about the video, they had gone to Hooters the year before too, he was worried about safety, he did punish the student, and he was taken out of context or misunderstood.

The appeal overturned some of the reasons given in the initial decision, including finding he did not retaliate against students, but still resulted in his termination. Plaintiff was terminated on January 5, 2023.

Three other white males have been terminated by the district for violating the District's anti-discrimination policy. One such man held the same position at a different school. A Hispanic

male teacher was placed on administrative leave by the District for leading a walkout, but he was later hired for a different position.

Plaintiff brings six claims: (1) sex discrimination under Title VII, (2) sex discrimination under Title IX, (3) sex discrimination under the Colorado Anti-Discrimination Act (CADA), (4) race discrimination under Title VII, (5) race discrimination under 42 U.S.C. § 1981, and (6) race discrimination under CADA. The District seeks dismissal of all claims (D. 18).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however,

remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations omitted).

## III. ANALYSIS

The parties agree that Plaintiff's "discriminatory discharge claims, regardless of statute, are analyzed using the same substantive standards" (D. 21 at 3 n.1) (citing *Carney v. City & County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). A plaintiff may establish a prima facie discrimination claim "either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

At the first step of the burden-shifting framework, a plaintiff is required to prove a prima facie case. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). The particular elements of the prima facie case depend on the alleged circumstances. To establish a prima facie case of gender discrimination, a plaintiff must show: (1) they are a member of a protected class, (2) they suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024). An employee may establish an inference of discrimination in a variety of ways, such as showing "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, preferential treatment given to employees outside the protected class, . . . or, more generally, upon the timing or sequence of events leading to plaintiff's termination." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)

(internal quotations omitted). The standard is the same for people in minority and majority groups, i.e., it does not vary depending on the protected class, it simply requires a plaintiff to identify a protected class such as gender or race. *Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 310 (2025).

Once a plaintiff has established a prima facie case, a defendant must articulate some legitimate, nondiscriminatory reason for the employee's termination. *See DePaula*, 859 F.3d at 969. The defendant need only "articulate through some proof a facially nondiscriminatory reason" for the termination that is "reasonably specific and clear." *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

After a defendant articulates its reason for the adverse employment action, then the burden shifts back to the employee to prove by a preponderance of the evidence that the legitimate justification offered by the employer is merely a pretext for discrimination. A plaintiff may prove pretext by showing that the employer was motivated by a discriminatory reason or that the employer's explanation was not credible. *Vaughn*, 537 F.3d at 1153. A plaintiff may show "weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Aubrey*, 975 F.3d at 1015. At the same time, the issue is not whether the employer's decisions are "wise, fair or correct," but only whether the employer "honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Laul v. Los Alamos National Laboratories*, 765 F. App'x. 434, 440 (10th Cir. 2019).

Plaintiff has not stated a claim for discrimination under this standard. His claims fail to state a prima facie case because he does not allege specific facts from which the Court can draw

any inference of discrimination and because they do not support an inference that the reasons for terminating him were a pretext for discrimination.

Plaintiff first argues that he has stated plausible claims simply on the basis that he has shown that he was qualified for the job and that the position was not eliminated (D. 21 at 5, 9). This is insufficient on its own. *See Brown v. Marriott Hotel*, 602 F. App'x 726, 726–27 (10th Cir. 2015); *see also Mitchell v. City of Wichita*, Kansas, 140 F. App'x 767, 781 (10th Cir. 2005) ("although Mumma's and Carney's statements reflect concern about racial tension in the WPD and speculation that, had Mitchell been African American, he would have been treated differently, they do not provide the requisite 'specific facts' from which this Court can conclude that, but for Mitchell's race, he would not have been terminated").

Likewise, his conclusory allegations that he told the truth and that his accusers lied do not support and inference of discrimination or indicate pretext. He must show that the District did not believe its reasons in good faith. *Laul*, 765 F. App'x. at 440. None of his factual allegations support such an inference. Unfortunately, people routinely believe things that are untrue and adjudicators make mistakes. That they may have done so here does not show "weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the [District's] proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Aubrey*, 975 F.3d at 1015.

Plaintiff relies on *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) for the proposition that a "plaintiff may show pretext by demonstrating the 'proffered reason is factually false.'" *Id*. at 970 (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013)). But he misapplies this principle. A plaintiff shows that a proffered reason is "factually false" by

showing that it is not the true reason for the action, not by showing that the underlying facts are false. The same case explains that "[e]vidence that the employer should not have made the termination decision—for example, that the employer was mistaken . . . —is not sufficient to show that the employer's explanation is unworthy of credibility." *Id.* at 970-71. Thus, the issue is the credibility of the explanation, not the underlying facts.

Regardless, despite conclusory allegations asserting that all of the allegations against him were false (D. 12 at 2), Plaintiff admits to some of the underlying facts. For example,[3] he admits to taking the team to a Hooters restaurant two years in a row (*id.* at 4).[4] Is it implausible that a school administrator would view taking a coed high-school team to Hooters multiple times as reflective of sexism and as creating a sexually hostile environment[5] for female students participating on the team? No. It is, instead, imminently plausible that a student administrator could reach that determination in good faith, even if doing so was a mistake or unfair. It is not for the Court, or a jury, to judge the wisdom or correctness of the District's decision, only whether it was discriminatory based on Plaintiff's sex or race. *DePaula*, 859 F.3d at 970–71. And there are not well-pleaded factual allegations in the Complaint that suggest the decision-making process was suspicious or tainted by discriminatory bias. Instead, there are merely conclusory assertions

[3] The Complaint has a nonsensical sentence stating, "[t]he District also alleged that Plaintiff created a sexually hostile work environment by the team's decision to a Hooters restaurant" (D. 12 at 4). This is perhaps intended to blame the team, rather than him, for choosing Hooters. But he also alleges that his supervisor "implicitly ratified and endorsed" the decision to go there by attending, which, if true, is then equally true of Plaintiff (*id.*).

[4] He also admits to opposing students' desire to go to Black Lives Matter plaza, making a joke about squirrels as part of a religious discussion with a Native American student, and repeatedly referring to students as "snowflake" (D. 12 at 5–6).

[5] The Complaint does not discuss the District's policies, but there is no legal requirement that the District apply the same standard that applies to corresponding legal claims. Employers are merely required to adopt policies that are not themselves discriminatory. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 660 (2020).

that, for example, the team excursion "never caused any concerns, and could not form any valid, non-discriminatory basis for any disciplinary action" that are not entitled to the presumption of truth (D. 12 at 4). *See Khalik*, 671 F.3d at 1193 (finding allegations the plaintiff "was subjected to a false investigation and false criticism" were not entitled to the presumption of truth).

Finally, Plaintiff's assertions that there are similarly situated comparators are conclusory. At most, he alleges that the District was mistaken in the other terminations for accepting "unfounded and conclusory allegations" over the employees' "truthful account[s]" (D. 12 at 8). Such conclusory allegations are not entitled to the presumption of truth, and even if they were, they would fail for the same reason as Plaintiff's similar conclusory assertions discussed above. *See Khalik*, 671 F.3d at 1193. The comparison to the Hispanic teacher also fails because he held a different position and was accused of far different conduct. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)) ("Alleging the employer treated similarly situated employees more favorably is one method by which a plaintiff can plead circumstances that give rise to an inference of discrimination.").

Considering all of Plaintiff's allegations, there are no specific factual allegations that support either an inference of discrimination or pretext. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174 (10th Cir. 1998) (considering evidence of discrimination and pretext in totality). Even crediting Plaintiff's conclusory allegations, he posits a he-said-they-said circumstance where the District made a mistake, which does not support an inference of discrimination or pretext. Thus, the Court grants dismissal.

## IV. CONCLUSION

Accordingly, Defendant's Motion to Dismiss (D. 9) is DENIED AS MOOT and Defendant's Renewed Motion to Dismiss (D. 18) is GRANTED. The Clerk of Court shall close this case.

DATED May 11, 2026.

BY THE COURT:



Gordon P. Gallagher
United States District Judge